UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THOMAS P. O'CONNOR, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) | 19-11383-FDS |
| v. | ) ) ) |  |
| ANDREW SAUL, Commissioner, Social Security Administration, | ) ) ) |  |
| Defendant. | ) ) |  |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR ORDER REVERSING THE COMMISSIONER'S DECISION AND
COMMISSIONER'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION

**SAYLOR, C.J.**

This is an appeal from the final decision of the Social Security Administration ("SSA") denying an application for Social Security Disability Insurance ("SSDI") benefits. Plaintiff Thomas P. O'Connor alleges that he became disabled in 2008 after various impairments worsened, rendering him unable to work. He reached full retirement age in 2012. He did not apply for SSDI until 2015, more than three later, and more than six years after he had begun receiving social security retirement benefits. That application was untimely, as the application had to be filed within 12 months after he reached retirement age.

He now contends that representatives of the SSA gave him false information, which caused him to miss the filing deadline. An Administrative Law Judge ("ALJ") found that he was not entitled to receive SSDI benefits because of the late filing of his application, and that he was not entitled to have his application deemed to have been filed earlier based on his claim of

misrepresentation.

O'Connor has moved to reverse, and the Commissioner has moved to affirm, that decision. For the reasons stated below, O'Connor's motion to reverse will be denied and the Commissioner's motion to affirm will be granted.

## I.   Background

The following is a summary of the relevant evidence as set forth in plaintiff's affidavit ("Aff.") and the administrative record ("A.R.").

### A.   Occupational History

Thomas P. O'Connor is approximately 74 years old. (Aff., Ex. 2 at 2).

According to his affidavit, O'Connor worked for almost 40 years for Verizon until 2003. (*Id.*). After Verizon downsized his department, he worked as a telephone engineer and contractor. (*Id.*). That work required extensive fieldwork that was physically demanding. (*Id.*).

### B.   Medical History

O'Connor alleges that he has been partially disabled since 1972, when he was awarded disability benefits from the U.S. Department of Veterans Affairs ("VA"). (Aff. at 1). According to his affidavit, over time, his physical condition deteriorated to the point that everyday activities were painful. (*Id.*). In June 2010, he had hip replacement surgery. (Aff., Ex. 2 at 2). As a result of that surgery, he was awarded a 100 percent temporary disability rating from the VA, which was later changed to a 100 percent permanent disability rating. (Aff. at 1).[1] On August 10, 2010, after contacting the SSA to request a waiver for overpayment, O'Connor told the SSA that he doubted whether he would be able to return to work after his recent surgery. (Aff., Ex. 2 at 2). He has not worked since March 2011. (*Id.* at 9).

---

[1] Aside from his hip replacement, it is not clear from the record whether there were other medical conditions contributing to his disability rating.

### C.     Communications with the Social Security Administration

According to O'Connor, on January 17, 2008, he contacted the Norwood, Massachusetts, office of the SSA to inquire about filing for early retirement benefits. (Aff. at 1). He was then 61. He alleges that he spoke to an SSA employee named "Mrs. Cowgill," and told her of his status as a veteran with disabilities. (*Id.*). She reportedly advised him that it would not affect his Social Security benefits. (*Id.*). She also informed him that he would not be eligible for early retirement benefits until he turned 62, on April 4, 2008. (*Id.*). As a result of that conversation, he returned to his work as a telephone engineer and contractor. (*Id.*).

On October 27, 2008, O'Connor contacted the SSA office located in Jamaica, New York, to file for early-retirement benefits. (*Id.*). According to O'Connor, his claim was processed by an SSA employee named "Mrs. Palumbo," and he told her of his status as a veteran with disabilities. (*Id.*). Mrs. Palumbo allegedly told him that because he was not blind, did not use crutches, and did not use a wheelchair, he was not considered disabled for the purposes of early-retirement benefits, and that his disability would not affect his retirement benefits. (*Id.*). O'Connor then applied for early-retirement benefits. (Aff., Ex. 2 at 2). His application was accepted, with a reduction in benefits based on age. (*Id.* at 2). He began receiving payments in February 2009. (*Id.*).

According to O'Connor, on November 16, 2011, he contacted the SSA office in Birmingham, Alabama, to alert it of his wife's death and to halt deposits into their joint banking account. (Aff. at 2). Mary Scott, an SSA representative in the Birmingham office, advised him to take his wife's original birth certificate, his wife's death certificate, and the couple's wedding certificate to his local SSA office in Norwood, Massachusetts, to process his claim for a lump-sum death benefit. (*Id.*). When he asked whether he could file for disability benefits, Ms. Scott

allegedly advised him to ask the representatives in Norwood. (*Id.*).

On November 22, 2011, O'Connor visited the SSA office in Norwood, Massachusetts, with the required documents to process his death-benefit claim. (*Id.*). According to O'Connor, an SSA representative named "Mrs. Homan" processed his claim. (*Id.*). During the visit, he asked her to help him file a claim for SSDI benefits. (*Id.*). However, when he told her that he was already receiving retirement benefits, she allegedly informed him that he was not eligible to file a claim for disability benefits. (*Id.*).

O'Connor reached full retirement age on April 4, 2012. He did not apply for SSDI benefits until October 22, 2015, nearly four years later.

### D.     **Procedural Background**

As noted, on October 22, 2015, O'Connor applied for SSDI benefits, alleging that he became disabled on January 1, 2008. (Aff., Ex. 2 at 5). On December 11, 2015, the SSA found that he was disabled, but with an onset date of March 31, 2012. (*Id.*). His application was denied on the ground that the record did not establish five continuous months of disability between the established onset date, which was March 31, 2012, and the date he attained full retirement age, which was April 4, 2012. (*Id.*).

O'Connor then requested reconsideration of the established onset date. (*Id.*). After reconsideration, on March 16, 2016, the SSA determined that the onset date was May 1, 2011. (*Id.*). Nevertheless, it notified O'Connor on March 26, 2016, that he would not receive SSDI benefits for the period from May 1, 2011, to March 31, 2012, because the record still did not establish five continuous months of disability before he reached retirement age. (*Id.* at 6).

On May 16, 2016, O'Connor requested a hearing before an ALJ. (*Id.*). On February 3, 2017, his attorney at the time, Mark Bronstein, wrote to the SSA, asserting that O'Connor

received misinformation when he attempted to file an application for SSDI benefits in May 2011, and that his inquiry at that time should be deemed an application for benefits. (*Id*. at 8).[2] In response, on May 19, 2017, Laura Durnick of the SSA filed a Report of Contact "Misinformation Addendum." (*Id*.). In that report, Durnick stated that O'Connor's application for retirement benefits did not allege any disability, and that there was no "closeout letter" resulting from his discussions with the SSA representative. She concluded that his claim that he had discussed and attempted to file an application for SSDI at that time could not verified. (*Id*.).

On June 30, 2018, the ALJ requested that O'Connor submit any written records that he kept of his conversations with the SSA representatives who he alleged had provided him with misinformation. (*Id*. at 10). The ALJ received no response. (*Id*.).

On September 25, 2018, the ALJ concluded that O'Connor was not entitled to receive SSDI benefits. (*Id*. at 17). O'Connor filed the complaint in this action on June 24, 2019.

## II. Analysis

### A. Standard of Review

Under the Social Security Act, the court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," *id.*, because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ," *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *see Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). Therefore, "[j]udicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and

---

[2] Bronstein likely misstated the date: O'Connor's affidavit details his alleged attempt to file an application for SSDI benefits in November 2011, not in May 2011. (Aff. at 2).

found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

However, the court may reverse or remand the ALJ's decision when the ALJ ignored evidence or made legal or factual errors. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings . . . are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."); *Moore v. Astrue*, 2013 WL 812486, at *2 (D. Mass. Mar. 2, 2013) (citation omitted) ("[I]f the ALJ made a legal or factual error, the Court may reverse or remand such decision . . . ."). Accordingly, if the "ALJ failed to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby, left unresolved conflicts in the evidence, th[e] court can not conclude that there is substantial evidence in the record to support the Commissioner's decision." *Nguyen v. Callahan*, 997 F. Supp. 179, 183 (D. Mass. 1998); *see also Crosby v. Heckler*, 638 F. Supp. 383, 385-86 (D. Mass. 1985) ("Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation."). Questions of law, to the extent that they are at issue in this appeal, are reviewed *de novo*. *Seavey*, 276 F.3d at 9.

### B. Standard for Entitlement to SSDI and SSI Benefits

An individual is not entitled to SSDI or SSI benefits unless he or she is "disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(a)(1)(E), (d) (setting forth the definition of disabled in the context of SSDI); 42 U.S.C. §§ 1382(a)(1), 1382c(a)(3) (same in the context of SSI). A person who has reached full retirement age must file for disability benefits within 12 months, after which he or she becomes ineligible to receive such benefits. 20 C.F.R. § 404.310(c).

However, a claimant who fails to timely apply for disability benefits may still receive them if the SSA misinformed him about his eligibility. Allegations that the SSA misinformed a claimant about his eligibility must contain sufficient information to enable the agency to determine that (1) the agency provided misinformation about his eligibility for benefits and (2) this information caused him not to file an application for benefits. 20 C.F.R. § 404.633(f). Misinformation claims must be filed in writing, and they must explain what information was provided; how, when, and where it was provided and by whom; and why the information caused an individual not to file an application. *Id*. In addition, the claimant must file an application for benefits after the alleged misinformation was provided, and his deemed filing date must have occurred during the time in which he is or was eligible to receive benefits. *Id*.

"Generally, the burden is on the claimant to show that his failure to file was caused by misinformation." *Montgomery v. Astrue*, 2012 WL 1606192, at *4 (N.D. Tex. Apr. 13, 2012), *report and recommendation adopted*, 2012 WL 1606189 (N.D. Tex. May 8, 2012). To do so, a claimant must show that: (1) he made a specific request to the SSA for information about his eligibility for benefits; (2) an SSA employee provided information in response, either orally or in writing; (3) the employee did so while acting in his or her official capacity; and (4) that information was "incorrect, misleading, or incomplete in view of the facts" of which the employee knew, was aware of, or should have been aware of at the time. *See Haley v. Barnhart*, 2003 WL 23218083, at *3 (D. Kan. Oct. 16, 2003), *report and recommendation adopted*, 2003 WL 22951929 (D. Kan. Nov. 5, 2003) (citing 20 C.F.R. § 404.633(c)).[3]

---

[3] For information to be considered incomplete, "the [SSA] employee must have failed to provide [the claimant] with the appropriate additional information which he or she would be required to provide in carrying out his or her official duties." *Haley*, 2003 WL 23218-83, at *3.

7

### C. The Administrative Law Judge's Findings

The ALJ found that O'Connor was not entitled to receive SSDI benefits as a result of the application he filed on October 22, 2015.  (Aff., Ex. 2 at 13).  Specifically, the ALJ determined that he was not eligible for disability benefits because he had reached full retirement age on April 4, 2012, and his application had not been filed within 12 months of reaching retirement age, after which claimants become ineligible under 20 C.F.R. § 404.310(c).  (*Id*.).  Accordingly, absent an earlier deemed application date, he was ineligible to receive SSDI benefits.  (*Id.* at 14).

The ALJ then addressed whether O'Connor was entitled to an earlier deemed filing date based on misinformation provided by an SSA representative.  The ALJ determined that he had not established by a preponderance of the evidence either (1) that he had made a specific request for information about his eligibility to receive SSDI benefits or made a specific request to file an application for such benefits, or (2) that he was given misinformation concerning his eligibility or that his attempt to file an application for benefits was refused.  (*Id*. at 14).  The ALJ reached that conclusion based on six considerations.

First, the ALJ determined that O'Connor's alleged statement to an SSA representative on October 27, 2008—that he was a disabled veteran and would like to inquire about whether his retirement benefits would be affected by his VA benefits—was not a specific inquiry for information concerning SSDI.  (*Id*. at 15).  Accordingly, any failure of an SSA representative to provide information at that time concerning SSDI benefits did not constitute misinformation.  (*Id*.).  Similarly, the ALJ found that O'Connor's statements attached to his requests for overpayment waivers in August 2010 and July 2011 were not specific inquiries for information concerning SSDI.  (*Id.*).

Second, O'Connor contended that he had based his statements about his alleged oral

8

contact with the SSA over the span of seven years on contemporaneous notes that he collected. (*Id.*). The ALJ found that O'Connor's statements were "not credible" because he had not produced any such "notes or other memorialization of contact made contemporaneously" that recorded any relevant details of his alleged contacts with the SSA between 2008 to 2015. (*Id.*)

Third, despite O'Connor's claim that he was allegedly denied SSDI benefits to which he was entitled at multiple offices over multiple years, he never made a written request or demand for those benefits. (*Id.*). The only written communication he made to the SSA consisted of his requests for waiver of overpayments. (*Id.*). Absent a written request to file an application or a written demand for disability benefits, the ALJ found his allegations that he made such requests were not credible. (*Id.*).

Fourth, under 20 C.F.R. § 404.407(c), whether an individual receiving retirement benefits, like O'Connor, "may also opt to receive Disability Insurance Benefits for which he is eligible *depends on the individual's age not his receipt of Retirement Insurance Benefits.*" (*Id.* at 16). The ALJ determined that because this "easily comprehensible" policy had been in effect since 1967, O'Connor's testimony that he had received the same incorrect information from "multiple representatives of the Social Security Administration from multiple offices on multiple occasions over multiple years" was not credible. (*Id.*).

Fifth, the ALJ concluded that if in fact O'Connor was told after April 2012 that he was not entitled to SSDI benefits, that statement would be correct, because he reached full retirement age at that time and became ineligible for disability benefits. (*Id.*). The ALJ determined that such a statement could not constitute misinformation.

Sixth, the ALJ gave "little weight" to O'Connor's argument that his claim of misinformation was established by or supported by statements he alleged were made by offices

of members of Congress whom he contacted.  (*Id*.).  Because there was no written evidence of his contacts with those offices, of what information he provided, or of any contact between those offices and the SSA, the ALJ did not credit that assertion.  (*Id*.).

Accordingly, the ALJ determined that O'Connor was not entitled to an earlier deemed application date, and he was therefore ineligible to receive SSDI benefits.

### D.       Plaintiff's Objections

O'Connor raises various objections to the ALJ's decision.  Essentially, he contends that he was entitled to an earlier deemed application date because he received misinformation from SSA employees on several occasions, and that the ALJ erroneously found those claims were not credible.  Because O'Connor does not contest the ALJ's first determination—that he was not eligible to receive SSDI benefits as a result of the application that was filed on October 22, 2015—the Court's review of the ALJ's decision is limited to whether O'Connor was entitled to an earlier deemed application date.

As set forth above, an individual seeking an earlier deemed application date on account of misinformation must show that (1) he made a specific request to the SSA for information about his eligibility for benefits; (2) an SSA employee provided information in response, either orally or in writing; (3) while the employee was acting in his or her official capacity; and (4) that information was "incorrect, misleading, or incomplete in view of the facts" of which the employee knew, was aware of, or should have been aware of at the time.  *See Haley*, 2003 WL 23218083, at *3; 20 C.F.R. § 404.633(c).

"Judicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and found facts based on the proper quantum of evidence." *Ward*, 211 F.3d at 655.  In this case, because the ALJ appropriately weighed the available

evidence and applied the four-part test above, the Court concludes that the ALJ reasonably found that O'Connor was not entitled to SSDI benefits.

To start, the ALJ reasonably found that O'Connor is not entitled to an earlier deemed filing date based on his alleged interactions with SSA employees in October 2008, August 2010, or July 2011 because he did not make a specific inquiry about his eligibility. O'Connor contends that Mrs. Palumbo's failure to tell him in October 2008 about his eligibility for SSDI benefits caused him not to apply for such benefits. Even if that is true, that interaction can support a misinformation claim only if Palumbo was responding "to a specific request" he made "for information about [his] eligibility for benefits." 20 C.F.R. § 404.633(c)(4). The ALJ found that O'Connor had not made such a request about his SSDI benefits because he had only (1) identified himself as a disabled veteran, and (2) inquired into whether the disability benefits he received from the VA would affect the SSA retirement benefits—not disability benefits—for which he was applying. (Aff., Ex. 2 at 15). That determination applies the proper legal standard and is based on substantial and appropriate evidence, and so it is entitled to deference.

Furthermore, even if O'Connor had made specific requests on those occasions, or on any of his other alleged interactions with SSA employees, the ALJ reasonably concluded that he had not carried his burden of proof to show that they misinformed him. O'Connor objects to this conclusion, but he primarily challenges the ALJ's determination that his statements were not credible. That determination was based on four grounds, each of which was reasonable.

First, the ALJ reasonably questioned why O'Connor had not produced his notes. Where, as here, a claimant cannot produce "preferred evidence" of his interactions with SSA employees, the ALJ must consider a claimant's statements, assess their credibility, and evaluate any other

information that is available. 20 C.F.R. § 404.633(d)(2)(iv).[4] O'Connor has provided, both to the ALJ and this Court, rather detailed descriptions of his alleged interactions with SSA employees. (*See, e.g.*, Aff. at 1-2). He testified before the ALJ, and maintains today, that those statements were based on notes he had taken. (*Id.* at 2). But the SSA was unable to corroborate those statements, and so the ALJ reasonably requested his notes and discounted his claims when he failed to produce them. (Aff., Ex. 2 at 15). *See Grubart v. Shalala*, 913 F. Supp. 243, 247 (S.D.N.Y. 1996). He now contends he hand-delivered the notes to his lawyer's office two days before he went before the ALJ and that the ALJ should have considered them. (Aff. at 2; Pl. Mem. at 1-2). But there is no evidence in the record to support that assertion; even now, O'Connor has yet to produce his notes. Thus, his objection does not provide a reason to overturn this basis for the ALJ's decision.[5]

Second, the ALJ reasonably found that O'Connor's failure to make written requests undermined his statements. Specifically, the ALJ questioned why he had not made written requests to the SSA for disability benefits despite his claim that he was "skeptical" when SSA employees supposedly rebuffed his attempts to apply for those benefits. (Aff., Ex. 2 at 15). The ALJ found it especially hard to believe that O'Connor had failed to do so because in 2010 and 2011, he had submitted written requests to the SSA related to his retirement benefits. (*Id.*). O'Connor now contends that he did not write to the SSA about his disability benefits because at the time, he was focused on caring for his ailing wife, who was diagnosed with lung cancer in

---

[4] "Preferred evidence" is "written evidence which relates directly to [a claimant's] inquiry about [his] eligibility for benefits or the eligibility of another person and which shows that [the SSA] gave [him] misinformation which caused [him] not to file an application." 20 C.F.R. § 404.633(d)(1). "Preferred evidence" includes, but is not limited to, documents sent to a claimant by the SSA or the SSA's records of contact with the claimant. *Id.*

[5] Under 42 U.S.C. § 405 (g), the court "may at any time order additional evidence to be taken" by the SSA, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Such an order is not warranted here, as O'Connor has shown neither that his notes are material nor good cause for his failure to produce them to the ALJ.

2009 and died in 2011.  (Aff. at 3).  While those sad circumstances might explain not writing to the SSA at all, they do not address the ALJ's main concern—specifically, that during 2010 and 2011, O'Connor was able to write to the SSA about his retirement benefits but did not follow up on his supposed skepticism about SSA employees' answers regarding his disability benefits.  (Aff., Ex. 2 at 15).  Because that inconsistency was the basis for the ALJ's credibility determination, and remains despite O'Connor's objections, the ALJ's conclusion is entitled to deference.  *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).

Third, the ALJ reasonably found it not credible that so many SSA employees had supposedly made the same basic error of telling O'Connor he was ineligible for SSDI. O'Connor now contends that the ALJ oversimplified, and implies that on one occasion, it was understandable for an SSA employee to make that error because he never mentioned SSDI benefits.  (Pl. Mem. at 2).  But even if that is true, the ALJ's wider point still stands.  The ALJ found it hard to believe that so many SSA employees had allegedly concluded that O'Connor was ineligible for SSDI even though the rules at issue were relatively straightforward and had been in effect "for decades."  (Aff., Ex. 2 at 16).  He only offers a potential explanation for one of those several incidents, which does not justify overturning the ALJ's credibility determination. *See Frustaglia*, 829 F.2d at 195.[6]

Fourth, the ALJ reasonably discounted O'Connor's claims that he had contacted the offices of Sen. Elizabeth Warren and Rep. Joseph Kennedy.  As O'Connor himself admits, these supposed contacts "should be easily verified because [they were] done via a liaison between the SSA and both offices."  (Pl. Mem. at 2).  Yet neither he nor the SSA could furnish any evidence

---

[6] Furthermore, O'Connor refers to his "initial contact" with the SSA, which was presumably his alleged conversation with Cowgill in January 2008.  (*See* Aff. at 1-2).  His assertion that he never mentioned SSDI benefits in that conversation suggests that he likely did not make a specific request, which would mean he is not entitled to an earlier deemed filing date based on that conversation.  (*Cf.* Aff., Ex. 2 at 15).

13

of those conversations. (Aff., Ex. 2 at 16). He now contends that this is due to "very questionable" record-keeping by the SSA. (Pl. Mem. at 2). But on this record, the ALJ could reasonably conclude that it was more likely that those contacts never occurred than that the SSA had lost its records of them, especially given his failure to produce the notes he allegedly kept of those conversations. That conclusion is entitled to deference. *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

O'Connor also contends that the ALJ's decision contains a misstatement of the law. Specifically, he points to the ALJ's statement that if an SSA employee had told him after April 2012 that he could not receive SSDI benefits beyond April 2012, that statement would have been correct. (*See* Aff., Ex. 2 at 16). As the Commissioner acknowledges, this appears to be false: he would have had an additional twelve months to apply for SSDI benefits after he reached retirement age in April 2012. (*See* Def. Mem. at 18). *See* Program Operations Manual System § 10105.015(B). Nevertheless, in light of the ALJ's other grounds for rejecting O'Connor's claim, this one misstatement does not provide a sufficient basis to overturn the ALJ's decision. *Ward*, 211 F.3d at 656 ("[T]here was no harm from the ALJ's use of an erroneous ground of decision because there was an independent ground on which affirmance must be entered as a matter of law[.]").

In summary, the ALJ decided that O'Connor was not entitled to an earlier deemed filing date based on several grounds, each of which has substantial support in the record. O'Connor challenges several of those determinations, but he primarily contests the ALJ's factual conclusions, criticizing the ALJ's refusal to credit his statements and explanations. The ALJ amply explained the reasons for that refusal and grounded them in specific evidence in the record. "The responsibility for weighing conflicting evidence, where reasonable minds could

differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey*, 276 F.3d at 9.  Accordingly, the ALJ's decision was supported by substantial evidence, and is therefore conclusive, as required by statute.  42 U.S.C. § 405(g).

### III.   Conclusion

For the foregoing reasons, plaintiff's motion for an order to reverse and remand the final decision of the Commissioner of the Social Security Administration is DENIED, and defendant's motion to affirm the action of the Commissioner is GRANTED.  This matter is hereby affirmed.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  September 18, 2020          Chief Judge, United States District Court